Filed: 2/13/2024 2:32 PM
Michael Gould
District Clerk
Collin County, Texas
By Kathy Richardson Deputy
Envelope ID: 84461317

493-00882-2024

CASE NO. _____

| | | |
|---|---|---|
| **TERRI J. STOUT** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **____JUDICIAL DISTRICT** |
| | § | |
| **PHH MORTGAGE CORPORATION,** | § | |
| **and LEGACY BROKERAGE, INC.** | § | |
| *Defendants.* | § | **COLLIN COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Terri J. Stout, Plaintiff (thereafter referred to as "Plaintiff") who hereby makes and files this her Plaintiff's Original Petition and Application for Injunctive Relief, complaining of PHH Mortgage Corporation ("Defendant PHH"), and Legacy Brokerage, Inc. ("Defendant Legacy") and for cause of action will show unto this Court as follows:

### I. DISCOVERY CONTROL PLAN

1.     Plaintiff intends to conduct discovery under Level 2 of the Texas Rules of Civil Procedure 190.3.

### II. PARTIES

2.     Plaintiff, Terri J. Stout is an individual who resides at the real property in dispute, located at 4544 Fremont Lane, Plano, TX 75093.

3.     Defendant, PHH Mortgage Corporation, is a Foreign-For-Profit Corporation in existence and doing business in the State of Texas. Its principal office is 940 Ridgebrook Road, Sparks, MD 21152. It may be served with this original petition through its registered agent for service of process at: **Corporation Service Company d/b/a CSC – Lawyers Incorporating**

Copy from re:SearchTX

**Service Company, 211 E. 7ᵗʰ St., Suite 690, Austin, Texas 78701-3218.**

4.      <u>Defendant, Legacy Brokerage, Inc.</u> is a Domestic For-Profit Company in existence and doing business in the State of Texas. Its principal office is located at 4805 S Colony Blvd, The Colony, TX 75056. It may be served with this Original Petition through its registered agent for service of process at: **Fazel Rahmani, 4805 S Colony Blvd, The Colony, TX 75056 USA.**

### III. MISNOMER, ALTER EGO AND MISIDENTIFICATION

5.      If any parties are misnamed or not included here, Plaintiff contends that such an error and/or omission is a "misidentification," misnomer," and/or "alter ego" of the parties named. Alternatively, Plaintiff contends that any "corporate veils" should be pierced to properly include, in the interest of equity and justice, those whose actions or inactions caused or causes injury and damages to Plaintiff.

### IV.  JURISDICTION

6.      The Court has jurisdiction over this controversy because the damages are within the jurisdictional limits of this Court as Plaintiff seek monetary damages less than $250,000 and non-monetary relief.

### V.  VENUE

7.      Pursuant to Section 15.002 and 15.011 of the Texas Civil Practice and Remedies Code, Venue is proper in Collin County, Texas, because this is a suit involving real property located within Collin County, Texas, and all or a substantial part of the events or omissions giving rise to the claim occurred in Collin County.

Copy from re:SearchTX

## VI.  FACTS

8.      On or about March 14, 2006, Plaintiff acquired a second lien on the real property subject to this dispute in the amount of $38,800.00 secured by the property located at 4544 Fremont Lane, Plano, TX 75093 ("Property") as evidenced by the Deed of Trust filed for record in Collin County, Texas. ***See Ex. 1*** The original lender was WR Starkey Mortgage, L.L.P. who subsequently sold and/or assigned the loan through transfer and assignment, ending with the Defendant PHH. The modified principle, interest, taxes and insurance (PITI) payment prior to foreclosure was $373.13. Defendant PHH, is acting as the mortgage servicer for U.S. Bank Trust Company, National Association, as trustee, as successor-in-interest to U.S. Bank National Association, as Successor Trustee to Bank of America, N.A., successor-by-merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-14SL who is the Mortgagee of the Note and Deed of Trust associated with the above referenced loan.

The real property is legally known as:

**LOT 7, BLOCK G, OF REPLAT OF PRESTON RIDGE II, AN ADDITION TO THE CITY OF PLANO, COLLIN COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME G, PAGE 59, OF THE PLAT RECORDS OF COLLIN COUNTY, TEXAS.**

**Commonly known as 4544 Fremont Lane, Plano, TX 75093.**

9.      Plaintiff contends that the mortgage account contains inaccurate information such as the total amount to cure the default. Plaintiff has had an ongoing dispute with the Defendant PHH regarding the correct amount of her unpaid principal balance, but to date has not been able to get the errors resolved. Additionally, Plaintiff contends that notices of default, opportunity to cure the default, and notice of posting of foreclosure sale were not sent to her. Plaintiff contends

---

Copy from re:SearchTX

that due to this lack of notice of the foreclosure sale, Plaintiff did not have the opportunity to cure the default and/or sufficient time to stop the foreclosure sale – all of which forms the basis of this lawsuit. Due to the wrongful foreclosure, Plaintiff stands to lose her entire investment in the home as a result of the wrongful foreclosure sale that occurred on December 5, 2023, and possession of the unique real property.

10.     On or about December 5, 2023, at the foreclosure sale, Defendant PHH conveyed the Property to Defendant Legacy.

11.     After the foreclosure sale, Defendant Legacy proceeded to attempt to evict the Plaintiff by filing a forcible detainer action in Case No. 04-EV-23-03324; Legacy Brokerage, Inc. v. Terri J. Stout, Defendant, In the Justice of the Peace, Precinct 4, Collin County, Texas.    This case was appealed to the Collin Court at Law and is in the process of being scheduled for trial. Plaintiff seeks the issuance of a temporary restraining order so the eviction can be halted pending the outcome of this wrongful foreclosure and suit to quiet title action.

12.     In summary, with this lawsuit, Plaintiff intend to seek rescission of the December 5, 2023, foreclosure sale, and because possession and title are so inextricably intertwined, seeks to restrain the Defendant Legacy's eviction proceedings in order to maintain the status quo until the merits of this lawsuit can be adjudicated by this Court.

## VII. FAILURE TO CORRECT ERRORS – RESPA
### Against Defendant PHH

13.     Plaintiff contends that Defendant is liable for failing to correct errors.  Plaintiff contends she provided notice of errors through the date of the scheduled foreclosure sale pursuant to 12 C.F.R. § 1024.35.  Plaintiff contends she provided Defendant with notice of

Copy from re:SearchTX

errors pursuant to 12 C.F.R. § 1024.35. Section 1024.35 enumerated the following applicable

ERRORS that are relevant to the case at bar - failure to:

> \* Provide an accurate payoff balance (within seven days) 12
> C.F.R. 1026.36(c)(3)

> \* A servicer must respond to a notice by "(B) Conducting a
> reasonable investigation and providing the borrower with a
> written notification that includes a statement that the servicer
> has determined that no error occurred, a statement of the
> reasons or reasons for this determination, a statement of the
> borrower's right to request documents relied upon by the
> servicer in reaching its determination, information regarding
> how the borrower can request such documents, and contact
> information, including a telephone number, for further
> assistance." See 12 C.F.R. § 1024.35(e)(1)(i).

> \* Moving forward with foreclosure in violation of new loss
> mitigation rules, pursuant to 12 C.F.R. § 1024.41.

14.    Plaintiff is entitled to damages for Defendant's failure to correct errors and moving

forward with foreclosure pursuant to 12 C.F.R. § 1024.41 and 12 U.S.C. 2605.

15.    Plaintiff contends she is entitled to damages because the Defendant failed to comply

with the Real Estate Settlement Procedures Act (RESPA) and is therefore entitled to damages.

> If the servicer fails to take one of the required actions within
> the time limit, under RESPA a borrower may recover:

> \*        any actual damages suffered by the borrower

> \*        if there is a pattern or practice of servicer
>         noncompliance, additional damages not to exceed
>         $2,000, and

> \*        attorneys' fees and costs. 12 U.S.C. §§ 2605[f][1],
>         2605[f][3].

> The statute of limitations for violations is three years. 12
> U.S.C. § 2614.

Copy from re:SearchTX

16.    Plaintiff will provide evidence that demonstrates a material issue of fact regarding errors contained in the accounting of her loan. Plaintiff had an absolute right to a fair and accurate accounting of her mortgage loan, and she was deprived of this right. The deprivation of this right could cost Plaintiff to lose her unique real property and lose the entire investment she had in the home which is estimated at least $250,000.00 or an amount to be proved at trial, exclusive of purchase closing costs and payments made prior to the loan default and/or the loss of her equity whichever is greater.

## VIII. SUIT TO QUIET TITLE
### against Defendant Legacy

17.    Plaintiff herein incorporate by reference all the claims set forth in paragraphs 8-12. Plaintiff herein asserts a suit to quiet title. In order to prevail in a suit to quiet title, Plaintiff must prove: (1) she has an interest in a specific property; (2) title to the property is affected by a claim by the Defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *See, e.g., Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.-El Paso 2012, pet. denied); s*ee also U.S. Nat'l Bank Ass'n v. Johnson,* No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.-Houston [1st Dist.]      Dec.      30,      2011,      no      pet.)      (mem.      op.).

18.    "[T]o contest a bank's foreclosure of a deed of trust, a party must, at the time of the foreclosure, either (1) be the mortgagor under the deed of trust or be in privity with the mortgagor, or (2) have an ownership interest in the property affected by the foreclosure." *Ursic v. NBC Bank S. Tex., N.A.*, 827 S.W.2d 334, 336 (Tex. App.-Corpus Christi 1991, writ denied) (*citing Goswami v. Metropolitan Sav.*, 751 S.W.2d 487, 489 (Tex. 1988)). And Plaintiff must recover on the strength of her own title, not on the weakness of her adversary's title. *Fricks v. Hancock*, 45 S.W.3d 322,

Copy from re:SearchTX

327 (Tex. App.-Corpus Christi 2001, no pet.) (*citing Alkas v. United Sav. Ass'n of Tex., Inc.*, 672 S.W.2d 852, 857 (Tex. App.-Corpus Christi 1984, writ ref'd n.r.e.)).

19.    Plaintiff "must allege right, title or ownership in herself with sufficient certainty to enable the court to see that Plaintiff has a right of ownership that will warrant judicial interference." *Ellison v. Butler*, 443 S.W.2d 886, 888-89 (Tex. Civ. App.-Corpus Christi 1969, no writ); *see Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.-Beaumont 2000, pet. denied). Plaintiff has the burden of supplying the proof necessary to establish her superior equity and right to relief. *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 387-88 (Tex. App.-Houston [1st Dist.], pet. denied) (op. on reh'g); *Ellison*, 443 S.W.2d at 888-89.


## IX. INJUNCTION
### against Defendant Legacy

20.    All facts in paragraphs 8-12 are hereby incorporated by reference.

21.    This is a cause for injunctive relief to prevent concluding eviction proceedings based on a wrongful foreclosure sale.

22.    Texas Courts have upheld the granting of injunctive relief where the only basis for injunctive relief may be a general balancing of the equities between the parties. *Winton v. Daves*, 614 S.W.2d 464 (Tex. Civ. App.-Waco 1981, no writ).  Furthermore, an injunction is necessary so that this Court may render a Declaration as to the validity of the Trustee or Substitute Trustee's deed at issue.


## X. APPLICATION FOR TEMPORARY
### RESTRAINING ORDER AND TEMPORARY INJUNCTION
### against Defendant Legacy

Copy from re:SearchTX

23.     If Plaintiff is evicted from the Property she will be deprived of a residence and her unique real property may be damaged or sold; this deprivation will cause the Plaintiff to suffer immediate and irreparable injury. Specifically, that Plaintiffs' ability to reclaim ownership and possession of the unique real property will be interfered with, for which Plaintiff will have no adequate remedy at law.  Plaintiff seeks the issuance of an immediate temporary restraining order without notice to restrain Defendant Legacy, its employees, agents, trustees, substitute trustees and/or attorneys from conducting concluding eviction proceedings that are underway at the Collin County Court at Law, 2100 Bloomdale Road, McKinney, Texas 75071 styled; Legacy Brokerage, Inc. v. Terri J. Stout and all future proceedings until this case is fully and finally adjudicated.

24.     Plaintiff will suffer immediate and irreparable injury in the event that Defendant Legacy, its employees, agents, trustees, substitute trustees and attorneys are permitted to evict Plaintiff from the Property during the pendency of this cause of action.  If such eviction is permitted to take place, the Plaintiff could lose the ability to reclaim title and possession of the unique real property for which Plaintiff will have no adequate remedy at law.  Plaintiff seeks the issuance of a temporary injunction, after notice and hearing, to restrain Defendant Legacy, its employees, agents, trustees, substitute trustees and attorneys from conducting and concluding the ongoing eviction proceedings that are currently underway at the Collin County Court at Law, styled; Legacy Brokerage, Inc. v. Terri J. Stout and all future proceedings until this case is fully and finally adjudicated.

## XI.  APPLICATION FOR PERMANENT INJUNCTION
### against Defendant Legacy

25.     Plaintiff seeks the issuance of a permanent injunction to prevent and restrain Defendant Legacy, its agents, employees, trustees, substitute trustees and attorneys from conducting and concluding ongoing eviction proceedings that are underway at the Collin County

Copy from re:SearchTX

Court at Law, 2100 Bloomdale Road, McKinney, Texas 75071, styled; Legacy Brokerage, Inc. v. Terri J. Stout and from conducting any further proceedings until this case is fully and finally adjudicated.  If such proceedings are permitted to take place, Plaintiff will be wrongfully deprived of the ability to reclaim title, possession and use of the Property, for which Plaintiff will have no adequate remedy at law.

## XII.  BREACH OF CONTRACT
### Against Defendant PHH

26.    In the alternative and/or in addition to the above, Plaintiff hereby incorporates by reference all facts pled in paragraphs 8-12 to show Defendant PHH is liable for Breach of Contract. As stated earlier, Plaintiff executed a written deed of trust which provided details of some of the contractual terms that the parties agreed to.  The deed of trust was prepared by the lender who originated the mortgage and required to be signed by Plaintiff, which is customary in the mortgage industry.  Plaintiff and Defendant PHH were both required to comply with the Deed of Trust.

27.    Specifically, Plaintiff contends that Defendant PHH: 1) had a duty to comply with the deed of trust and the Texas Property Code with providing timely notices of default, opportunity to cure the default, and notice of posting of foreclosure sale.   As a result, Plaintiff contends that Defendant PHH materially breached the deed of trust contract as to the handling of the required notices and compliance with RESPA, and this was a material component of the deed of trust contract from the inception through the present date.  Therefore, Defendant PHH breached the contract and did not have legal standing or contractual authority to attempt foreclosure or conduct the foreclosure at issue because the deed of trust was breached by Defendant PHH. The deed of trust was breached by the Defendant PHH, by not providing timely notices to the Plaintiff.

Copy from re:SearchTX

28.     In conclusion, Plaintiff will provide evidence that demonstrates a material issue of fact regarding errors contained in the accounting of her loan.  The Plaintiff had an absolute right to a fair and accurate accounting of her mortgage loan and show she was deprived of this right. The deprivation of this right will cause Plaintiff to lose the entire investment she had in the home which is estimated at least $250,000.00 or an amount to be proved at trial, exclusive of purchase closing costs and payments made prior to the loan modification attempts she sought with Defendant PHH.

29.     Plaintiff had a valid and enforceable deed of trust contract with Defendant PHH. The covenant in the deed of trust pertaining to where to send notices to the Plaintiff was breached, because Defendant PHH varied from the contract and failed to send accurate notices. As a result of the breach of contract and not receiving important documents, the Plaintiff suffered damages, resulting in actual damages and possibly the loss of her entire investment of the Property, increased housing costs, relocation costs, attorney's fees, court costs, and other miscellaneous unliquidated costs.

## XIII.  COMMON-LAW WRONGFUL FORCLOSURE
### against Defendant PHH

30.     All facts in paragraphs 8-12 are hereby incorporated by reference.

31.     In addition to and/or in the alternative to the above, Plaintiff contend Defendant PHH is liable for committing a common-law wrongful foreclosure action.

32.     The elements for this tort require that a Debtor/Plaintiff show that the Lender/Defendant PHH failed to comply with statutory or contractual terms or that the Lender/Defendant PHH complies with such terms yet takes affirmative action that detrimentally affects the basis of the foreclosure process. *See First State Bank v. Keilman, 851 S.W.2d 914, 921-*

Copy from re:SearchTX

*22 (Tex. App. – Austin 1993. writ denied)* This error resulted in a misrepresentation and/or defect in the foreclosure process that was made prior to Defendant PHH conducting the foreclosure sale. Therefore, the Defendant PHH, failed to comply with the Texas Property Code, Section 51.002(d).

33.     Finally, Plaintiff contend that because the foreclosure was wrongful then Plaintiff is entitled to the sought after injunctive relief of rescission and/or restraint of the concluding eviction proceedings.

34.     Plaintiff seeks damages within the jurisdictional limits of this Court to the extent such damages are available from Defendant PHH.

## XIV. UNJUST ENRICHMENT
### against Defendant PHH

35.      In the alternative and/or in addition to the other claims pled, Plaintiff hereby incorporate by reference all the facts as stated in paragraphs numbered 8-12 above to show that Defendant PHH is liable for committing unjust enrichment.

36.     Without admitting or denying anything, Plaintiff contend that Defendant PHH has been unjustly enriched by retaining surplus or excess funds over the amount of $50,000.00.  The foreclosure sale resulted in proceeds that exceeded the amount that Plaintiff owed at the time of the foreclosure sale.   Plaintiff seeks the immediate disgorgement of the surplus or excess funds.

## XV. DECLARATORY JUDGMENT
### against Defendant PHH and Defendant Legacy

### Title & Possession Dispute

37.     Plaintiff hereby incorporates by reference all the facts as stated in paragraphs numbered 8-12 above to show that Plaintiff is entitled to declaratory relief on the issues of both title and possession.   In addition, and/or in the alternative to the foregoing, and without waiving

---

Copy from re:SearchTX

same, Plaintiff claims that Defendant Legacy purported ownership interest in the Property is invalid and unenforceable as Defendant PHH was required to provide legal notices as stated herein. Upon learning of the defect in notice, Defendant PHH was required to rescind the sale within fifteen (15) days of the foreclosure sale pursuant to Texas Property Code §51.016. However, notwithstanding Defendant PHH's failure to rescind the sale timely, Plaintiff maintains that under Texas Property Code § 51.016(m), Plaintiff may maintain this action to rescind the sale through this lawsuit. Accordingly, Plaintiff seeks declaratory relief from this Court because a justiciable controversy exists between Plaintiff and Defendant PHH, and a judgment from this Court will terminate the controversy between the parties by considering the merits and clarifying the title dispute. Additionally, Plaintiff seek declaratory relief that title has been quieted in her name based on the wrongful foreclosure.

## XVI.  RESCISSION
### against Defendant PHH

38.     Plaintiff contends that a defect in the foreclosure process makes the Defendant PHH liable to the borrower/mortgagor, which provides Plaintiff with a Rescission theory of recovery. In such a case, a borrower/mortgagor/plaintiff may be able to have the foreclosure sale equitably rescinded and the foreclosure sale deed canceled.  Shearer v. Allied Live Oak Bank, 758 S.W. 2d 940 (Tex. App. - Corpus Christi 1988, writ denied) and Tex. Prop. Code § 51.016(m).

39.     Plaintiff seeks an order requiring that Defendant PHH rescind the foreclosure sale, reimburse Defendant Legacy for their purchase funds, and reinstate title in the name of Plaintiff and any other relief at law or equity that Plaintiff is entitled to receive.

## XVII. JURY DEMAND

---

Copy from re:SearchTX

40.     Plaintiff demands a jury trial.

## XVIII. CONDITIONS PRECEDENT

41.     All conditions precedent to Plaintiff's claims for relief have been performed or have

occurred, except as noted herein.

## XIX.  PRAYER

42.     For these reasons, Plaintiff ask that this Court issue citation for Defendant PHH and

Defendant Legacy to appear and answer, and that Plaintiff be awarded a judgment against

Defendant PHH and Defendant Legacy, for the following:

        a.     The Court issue an immediate temporary restraining order to restrain and

prevent Defendant Legacy, its agents, employees, trustees, substitute trustees and attorneys from

conducting and concluding the ongoing eviction proceedings that are underway in the Collin

County Court at Law, 2100 Bloomdale Road, McKinney, Texas 75071 styled; Legacy Brokerage,

Inc. v. Terri J. Stout.

        b.     Following hearing and notice to Defendant Legacy, the Court will issue a

temporary injunction to prevent Defendant Legacy, its agents, employees, trustees, substitute

trustees and attorneys from conducting any further proceedings during the pendency of this cause

of action in order to maintain the status quo.

        c.     That Defendant PHH be cited to appear and answer herein and that upon

final hearing, this Court grant declaratory judgment that Trustee's or Substitute Trustee's Deed is

invalid, unenforceable, cancelled, and rescinded, and that Plaintiff be awarded reasonable attorney

fees, costs of court, and such other and further relief to which she may show herself justly entitled,

and that the Court enter a permanent injunction to prevent Defendant Legacy, its agents,

Copy from re:SearchTX

employees, trustees, substitute trustees and attorneys from ever attempting to evict the Plaintiffs

and/or assert ownership under the Trustee or Substitute Trustee's deed until further orders of this

Court.

        d.       Actual damages.

        e.       Consequential damages.

        f.       Compensatory damages.

        g.       Attorney's fees.

        h.       Prejudgment and postjudgment interest.

        i.       Court costs.

        j.       Such other and further relief to which Plaintiff may show herself entitled.

Respectfully Submitted,

NORCROSS LAW
9288 Wichita Trail
Frisco, Texas 75033
Tel.    214-368-9300
Fax.    877-846-3149
chad.norcross@norcrosslaw.com

By:  */s/ Chad A. Norcross*
     Chad A. Norcross
     Texas Bar No. 24039513

     Attorney for Plaintiff

Copy from re:SearchTX

## **CERTIFICATE OF COMPLIANCE**

Counsel for Plaintiff hereby certifies that he has served a copy of the application and proposed order to the Defendant at least two (2) hours before this application and proposed order are presented to the Court for decision pursuant to The Civil Court Rules, Section 2.02. Defendant was informed that they can call Plaintiff's counsel on his mobile number to find out the Case Number, Court and Judge's Name and the exact time of the presentation of this application so that he may attend.

 /s/ Chad A. Norcross 
Chad A. Norcross

Copy from re:SearchTX

**20060831001257710    08/31/2006 01:57:24 PM DT  1/14**

Return To:
WR STARKEY MORTGAGE, L.L.P.

5055 W. Park Blvd., Suite 300
Plano, TX 75093

Prepared By:
POLUNSKY & BEITEL, LLP
8000 IH 10 WEST, SUITE 1600
SAN ANTONIO, TX  78230

# PURCHASE MONEY SECURITY DOCUMENT
## (Second Lien)

Loan #: 12602429                    MIN  100075900126024297

DEFINITIONS

(A) "Loan Agreement" means the Note, Security Document, deed of trust, any other related document, or any combination of those documents, under which you have made a loan to me.
(B) "Security Document" means this document, which is dated   August 14, 2006                    ,
together with all Riders to this document.
(C) "I" or "me" means TERRI J. STOUT, A SINGLE WOMAN

the grantor under this Security Document and the person who signed the Note ("Borrower").
(D) "You" means WR STARKEY MORTGAGE, L.L.P.

**Texas Purchase Money Security Document (Second Lien) WITH MERS**                    6/05

VMP®-76M(TX) (0506).01
Page 1 of 14                    Initials:
            VMP Mortgage Solutions, Inc.



Copy from re:SearchTX

the Lender and any holder entitled to receive payments under the Note. Your address is 5055 W. Park Blvd., Suite 300, Plano, TX 75093
(E) "Trustee" is    W.R. STARKEY, JR.

Trustee's address is 5055 W. Park Blvd., Suite 300, Plano, TX 75093

(F) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(G) "Note" means the Purchase Money Note signed by me and dated August 14, 2006
The Note states that the amount I owe you is Thirty Eight Thousand Eight Hundred And No/1000ths            Dollars (U.S. $ 38,800.00        ) plus interest.
I have promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than September 1, 2021
(H) The "Property" means the real estate that is described below under the heading "Transfer of Rights in the Property."
(I) "Riders" means all Riders to this Security Document that I execute. The Riders include *(check box as applicable)*:

☐ Texas Purchase Money Condominium Rider
☐ Texas Purchase Money Planned Unit Development Rider
☐ Other:

(J) "Applicable Law" means all controlling applicable federal, Texas and state constitutions, statutes, regulations, administrative rules, local ordinances and judicial and administrative orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on me or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. The term includes point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 4 of this Security Document.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than proceeds paid under my insurance) for: damage or destruction of the Property; condemnation or other taking of all or any part of the Property; conveyance instead of condemnation; or misrepresentations or omissions related to the value or condition of the Property.
(O) "Periodic Payment" means the regularly scheduled amount due for principal and interest under the Note plus any amounts under this Security Document.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. section 2601 *et seq.*) and Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Document, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan Agreement does not qualify as a "federally related mortgage loan" under RESPA.

VMP-76M(TX) (0506).01            Page 2 of 14            Initials: _____

Copy from re:SearchTX

(Q) "Successor in Interest of me" means any party that has taken title to the Property, whether or not that party has assumed my obligations under the Loan Agreement.

(R) "Ground Rents" means amounts I owe if I rented the real property under the buildings covered by this Security Document. One of the arrangements usually takes the form of a long-term "ground lease."

**1. SECURED AGREEMENT.** To secure this Loan Agreement I give you a security interest in the Property including existing and future improvements, easements, fixtures, attachments, replacements and additions to the Property, insurance refunds, and proceeds.

**2. TRANSFER OF RIGHTS IN THE PROPERTY.** The beneficiary of this Security Instrument is MERS (solely as nominee for you and your successors and assigns) and the successors and assigns of MERS. I give to the Trustee, in trust, with power of sale, the Property located in

|  |  |  |  |
|---|---|---|---|
| COLLIN | County at 4544 FREMONT LANE | | *(Street Address)* |
| PLANO | | *(City)* | TX | *(State)* |
| 75093 | *(Zip Code)* and further described as: | | |

LOT 7, BLOCK G OF REPLAT OF PRESTON RIDGE II, AN ADDITION TO THE CITY OF PLANO, COLLIN COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME G, PAGE 59 OF THE PLAT RECORDS OF COLLIN COUNTY, TEXAS.

Parcel ID Number:    R057800700701

The security interest in the Property includes existing and future improvements, easements, fixtures, attachments, replacements and additions to the Property, insurance refunds, and proceeds. I understand and agree that MERS holds only legal title to the interests granted by me in this Security Document, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Document.

This Security Document secures: (a) repayment of the Note, and all extensions and modifications of the Note; and (b) the completion of my promises and agreements under the Loan Agreement.

I promise that I own the Property and have the right to grant you an interest in it. I also promise that the Property is free of any lien, except liens that are publicly recorded. I promise that I will generally defend the title to the Property. I will be responsible for your losses that result from a conflicting ownership right in the Property. Any default under my agreements with you will be a default of this Security Document.

VMP-76M(TX) (0506).01                    Page 3 of 14                    Initials: _____

Copy from re:SearchTX

YOU AND I PROMISE:

**3. PAYMENT OF LATE CHARGES AND PREPAYMENT.** I will timely pay the principal, interest, and any other amounts due under the Loan Agreement. I will comply with the requirements of my escrow account under the Loan Agreement. I will make payments in U.S. currency. If any check is returned to you unpaid, you may select the form of future payments including: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are federally insured; or (d) Electronic Funds Transfer.

I will make payments to the location as you direct. You will apply my payments against the Loan Agreement only when they are received at the designated location. You may change the location for payments if you give me notice.

You may return any partial payment that does not bring the account current. You may accept any payment or partial payment that does not bring the account current without losing your rights to refuse full or partial payments in the future. I will not use any offset or claim against you to relieve me from my duty to make payments under the Loan Agreement.

**4. FUNDS FOR ESCROW ITEMS.** I will pay you an amount ("Funds") for: (a) taxes and assessments and other items that can take priority over your security interest in the Property under the Loan Agreement; (b) leasehold payments or Ground Rents on the Property, if any; and (c) premiums for any insurance you require under the Loan Agreement.

These items are called "Escrow Items." At any time during the term of the Loan Agreement, you may require me to pay Community Association Dues, Fees, and Assessments, if any, as an Escrow Item.

I will promptly give you all notices of amounts to be paid. I will pay you the Funds for Escrow Items unless you, at any time, waive my duty to pay you. Any escrow waiver must be in writing. If you waive my duty to pay you the Funds, I will pay, at your direction, the amounts due for waived Escrow Items. If you require, I will give you receipts showing timely payment. My duty to make Escrow Item payments and to provide receipts is an independent promise in the Loan Agreement.

If you grant me an escrow waiver, you may require me to pay the waived Escrow Items. If I fail to directly pay the waived Escrow Items, you may use any right given to you in the Loan Agreement. You may pay waived Escrow Items and require me to repay you. You may cancel the waiver for Escrow Items at any time by a notice that complies with the Loan Agreement. If you cancel the waiver, I will pay you all Funds that are then required under this Section.

At any time you may collect and hold Funds in an amount: (a) to permit you to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount you may require under RESPA.

You will estimate the amount of Funds due on the basis of current data and reasonable estimates of future expenses for Escrow Items or otherwise, according to Applicable Law. The Funds will be held in an institution whose deposits are federally insured (including you, if your deposits are insured) or in any Federal Home Loan Bank.

You will timely pay Escrow Items as required by RESPA. You will not charge me a fee for maintaining or handling my escrow account. You are not required to pay me any interest on the amounts in my escrow account. You will give me an annual accounting of the Funds as required by RESPA. If there is a surplus in my escrow account, you will follow RESPA. If there is a shortage or deficiency, as defined by RESPA, you will notify me, and I will pay you the amount necessary to make up the shortage or deficiency. I will repay the shortage or deficiency in no more than twelve monthly payments. You will promptly return to me any Funds after I paid the Loan Agreement in full.

Copy from re.SearchTX

**5. CHARGES AND LIENS.** I will timely pay all taxes, assessments, charges, and fines relating to the Property that can take priority over this Security Document. I also will timely pay leasehold payments or Ground Rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. If these items are Escrow Items, I will pay them as required by the Loan Agreement. I will promptly satisfy any lien that has priority over this Security Document unless I: (a) agree in writing to pay the amount secured by the lien in a manner acceptable to you and only so long as I comply with my agreement; (b) contest the lien in good faith by stopping the enforcement of the lien through legal proceedings (this contest must be satisfactory to you); or (c) obtain an agreement from the holder of the lien that is satisfactory to you.

If you determine that any part of the Property is subject to a lien that can take priority over this Security Document, you may give me a notice identifying the lien. I will satisfy the lien or take one or more of the actions described above in this section within 10 days of the date of the notice.

**6. PROPERTY INSURANCE.** I will insure the current and future improvements to the Property against loss by fire, hazards included within the term "extended coverage," and any other hazards including earthquakes and floods, as you may require. I will keep this insurance in the amounts (including deductible levels) and for the periods that you require. You may change these insurance requirements during the term of the Loan Agreement. I have the right to choose an insurance carrier that is acceptable to you. You will exercise your right to disapprove reasonably.

I will pay any fee charged by the Federal Emergency Management Agency for the review of any flood zone determination. You may require me to pay either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services; and subsequent charges each time re-mappings or similar changes occur that reasonably might affect the determination or certification.

If I do not keep any required insurance, you may obtain insurance at your option and at my expense. You are not required to purchase any type or amount of insurance. Any insurance you buy will always protect you, but may not protect me, my equity in the Property, my contents in the Property or protect me from certain hazards or liability. I understand that this insurance may cost significantly more than insurance I can purchase. I will owe you for the cost of any insurance that you buy under this section. Interest will be charged on this amount at the interest rate used by the Note. The interest will be charged from the date you made the payment. You will give me notice of the amounts I owe under this Section.

You may disapprove any insurance policy or renewal. Any insurance policy must include a standard mortgage clause, and must name you as mortgagee or a loss payee. I will give you all insurance premium receipts and renewal notices, if you request. If I obtain any optional insurance to cover damage or destruction of the Property, I will name you as a loss payee. In the event of loss, I will give notice to you and the insurance company. You may file a claim if I do not file one promptly. You will apply insurance proceeds to repair or restore the Property unless your interest will be reduced or it will be economically unreasonable to perform the work. You may hold the insurance proceeds until you have had an opportunity to inspect the work and you consider the work to be acceptable. The insurance proceeds may be given in a single payment or multiple payments as the work is completed. You will not pay any interest on the insurance proceeds. If I hire a public adjuster or other third party, I am responsible for the fee. It will not be paid from the insurance proceeds. The insurance proceeds will be applied to the amount I owe if your interest will be reduced or if the work will be economically unreasonable to perform. You will pay me any excess insurance proceeds. You will apply insurance proceeds in the order provided by the Loan Agreement.



VMP-76M(TX) (0506).01    Page 5 of 14    Initials: _____

If I abandon the Property you may file, negotiate, and settle any insurance claim. If the insurance company offers to settle a claim and I do not respond within thirty days to a notice from you, then you may settle the claim. The 30-day period will begin when the notice is given. If I abandon the Property, fail to respond to the offer of settlement, or you foreclose on the Property, I assign to you: (a) my rights to any insurance proceeds in an amount not greater than what I owe; and (b) any of my other rights under insurance policies covering the Property.

You may apply the proceeds to repair or restore the Property or to the amount that I owe.

**7. PRESERVATION, MAINTENANCE, PROTECTION, AND INSPECTION OF THE PROPERTY.** I will not destroy, damage or impair the Property, allow it to deteriorate, or commit waste. Whether or not I live in the Property, I will maintain it in order to prevent it from deteriorating or decreasing in value due to its condition. I will promptly repair the damage to the Property to avoid further deterioration or damage unless you and I agree in writing that it is economically unreasonable. I will be responsible for repairing or restoring the Property only if you release the insurance or condemnation proceeds for the damage to or the taking of the Property. You may release proceeds for the repairs and restoration in a single payment or in a series of payments as the work is completed. I still am obligated to complete repairs or restoration of the Property even if there are not enough proceeds to complete the work. If this Security Document secures a unit in a condominium or planned unit development, I will perform all of my obligations under the declaration or covenants creating or governing the condominium or planned unit development, and any other relevant document. You or your agent may inspect the Property. You may inspect the interior of the Property with reasonable cause. You will give me notice stating reasonable cause when or before the interior inspection occurs.

**8. PROTECTION OF LENDER'S INTEREST IN THE PROPERTY AND RIGHTS UNDER THE SECURITY INSTRUMENT.** You may do whatever is reasonable to protect your interest in the Property, including protecting or assessing the value of the Property, and securing or repairing the Property. You may do this when: (a) I fail to perform the promises and agreements contained in the Loan Agreement; (b) a legal proceeding might significantly affect your interest in the Property or rights under the Loan Agreement (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may have priority over the Loan Agreement or to enforce laws or regulations); or (c) I abandon the Property. In order to protect your interest in the Property, you may: (a) pay amounts that are secured by a lien on the Property which has or will have priority over the Loan Agreement; (b) appear in court; or (c) pay reasonable attorneys' fees.

You may enter the Property to secure it. To secure the Property, you may make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. You have no duty to secure the Property. You are not liable for failing to take any action listed in this Section. Any amounts you pay under this Section will become my additional debt secured by the Loan Agreement. These amounts will earn interest at the rate specified in the Loan Agreement. The interest will begin on the date the amounts are paid. You will give me notice requesting payment of these amounts. If the Loan Agreement is on a leasehold, I will comply with the lease.

**9. ASSIGNMENT OF MISCELLANEOUS PROCEEDS AND FORFEITURE.** Any Miscellaneous Proceeds will be assigned and paid to you. If the Property is damaged, Miscellaneous Proceeds will be applied to restore or repair the Property. You will only do this if your interest in the Property will not be reduced and if the work will be economically reasonable to perform. You will have

-76M(TX) (0506).01    Page 6 of 14    Initials: _____

the right to hold Miscellaneous Proceeds until you inspect the Property to ensure the work has been completed to your satisfaction. You must make the inspection promptly. You may release proceeds for the work in a single payment or in multiple payments as the work is completed. You are not required to pay me any interest on the Miscellaneous Proceeds. The Miscellaneous Proceeds will be applied to the amount I owe if your interest in the Property will be reduced or the work will be economically unreasonable to perform. You will pay me any excess Miscellaneous Proceeds. You will apply Miscellaneous Proceeds in the order provided by the Loan Agreement.

You will apply all Miscellaneous Proceeds to the amount I owe in the event of a total taking, destruction, or loss in value of the Property. You will apply the Miscellaneous Proceeds even if all payments are current. You will give any excess Miscellaneous Proceeds to me.

A partial loss can include a taking, destruction, or loss in value. In the event of a partial loss, the Miscellaneous Proceeds will be applied in one of two ways:

 (a) If the fair market value of the Property immediately before the partial loss is less than the amount I owe immediately before the partial loss, then you will apply all Miscellaneous Proceeds to the amount I owe even if all payments are current.

 (b) If the fair market value of the Property immediately before the partial loss is equal to or greater than the amount I owe immediately before the partial loss, then you will apply Miscellaneous Proceeds to the amount I owe in the following manner:

  (1) The amount of Miscellaneous Proceeds multiplied by the result of,

  (2) The amount I owe immediately before the partial loss divided by the fair market value of the Property immediately before the partial loss.

You and I can agree otherwise in writing. You will give any excess Miscellaneous Proceeds to me.

If I abandon the Property, you may apply Miscellaneous Proceeds either to restore or repair the Property, or to the amount I owe.

Damage to the Property caused by a third party may result in a civil proceeding. If you give me notice that the third party offers to settle a claim for damages to the Property and I fail to respond to you within thirty days, you may accept the offer and apply the Miscellaneous Proceeds either to restore or repair the Property or to the amount I owe. If the proceeding results in an award of damages, you will apply the Miscellaneous Proceeds according to this Section.

**10. FORBEARANCE NOT A WAIVER.** My successors and I will not be released from liability if you extend the time for payment or modify the payment schedule. If I pay late, you will not have to sue me or my successor to require timely future payments. You may refuse to extend time for payment or modify this Loan Agreement even if I request it. If you do not enforce your rights every time, you may enforce them later.

**11. JOINT AND SEVERAL LIABILITY, SECURITY DOCUMENT EXECUTION, SUCCESSORS OBLIGATED.** I understand that you may seek payment from me without first looking to any other person who signed the Note. Any person who signs this Security Document, but not the Note: (a) has no duty to pay sums secured by this Security Document; (b) is not a surety or guarantor; and, (c) only grants the person's interest in the property under the terms of this Security Document.

The lien against the Property is a voluntary lien and is a written agreement that shows the consent of each owner. You and I may extend, modify, or make any arrangements with respect to the terms of the Loan Agreement. Upon your approval, my successor who assumes my duties in writing will receive all of my rights and benefits under the Loan Agreement. I still will be responsible under the Loan Agreement unless you release me in writing. The Loan Agreement will extend to your assigns or successors.

 -76M(TX) (0506).01      Page 7 of 14      Initials:

Copy from re:SearchTX

**12. EXTENSION OF CREDIT CHARGES.** If an Applicable Law that sets a maximum charge is finally interpreted so that the interest, loan charges, or fees collected or to be collected with the Loan Agreement exceed the permitted amount, then you will: (a) reduce the amount to the amount permitted; or (b) refund the excessive amount to me.

You may choose to apply this refund to the amount I owe or pay it directly to me. If you apply the refund to the amount I owe, the refund will be treated as a partial prepayment.

If I default, you will be able to charge me reasonable fees paid to an attorney who is not your employee to protect your interest in the Property.

**13. DELIVERY OF NOTICES.** Under the Loan Agreement, you and I will give notices to each other in writing. Any notice under the Loan Agreement will be considered given to me when it is mailed by first class mail or when actually delivered to me at my address if given by another means. You will give notice to the Property address unless I provide you a different address. I will notify you promptly of any change of address. I will comply with any reasonable procedure for giving a change of address that you provide. There will only be one address for notice under the Loan Agreement. Notice to me will be considered notice to all persons who are obligated under the Loan Agreement unless Applicable Law requires a separate notice. I may give you notice by delivering or mailing it by first class mail to the address provided by you, unless you require a different procedure. You, however, will not receive notice under the Loan Agreement until you actually receive it. Legal requirements governing notices subject to the Loan Agreement will prevail over conditions in the Loan Agreement.

**14. GOVERNING LAW AND SEVERABILITY.** The Loan Agreement will be governed by Texas and federal law. If any provision in the Loan Agreement conflicts with any legal requirement, all non-conflicting provisions will remain effective.

**15. RULES OF CONSTRUCTION.** As used in the Loan Agreement: (a) words in the singular will mean and include the plural and vice versa; and (b) the word "may" gives sole discretion without imposing any duty to take action.

**16. LOAN AGREEMENT COPIES.** At the time the Loan Agreement is made, you will give me copies of all documents I sign.

**17. TRANSFER OF INTEREST IN PROPERTY.** "Interest in the Property" means any legal or beneficial interest. This term includes those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement (the intent of which is the transfer of title by me at a future date to a purchaser). If any part of the Property is sold or transferred without your prior written permission, you may require immediate payment of all I owe. You will not exercise this option if disallowed by Applicable Law. If you accelerate, you will give me notice. The notice of acceleration will allow me at least 21 days from the date the notice is given to pay all I owe. If I fail to timely pay all I owe, you may pursue any remedy allowed by the Loan Agreement without further notice or demand.

**18. BORROWER'S RIGHT TO REINSTATE AFTER ACCELERATION.** I have the right to stop you from enforcing the Loan Agreement any time before the earliest of: (a) 5 days before sale of the Property under any power of sale included in the Loan Agreement; (b) the day required by Applicable Law for the termination of my right to reinstate; or (c) the entry of a judgment enforcing the Loan Agreement.

I can stop the enforcement of the Loan Agreement and reinstate the Loan Agreement if all the following conditions are met: (a) You are paid what I owe under the Loan Agreement as if no acceleration



Copy from re:SearchTX

had occurred; (b) I cure any default of any promise or agreement; (c) You are paid all expenses allowed by Applicable Law, including reasonable attorneys' fees and other fees incurred for the purpose of protecting your interest in the Property and rights under the Loan Agreement; (d) I comply with any reasonable requirement to assure you that your interest in the Property will remain intact; and (e) I comply with any reasonable requirement to assure you that my ability to pay what I owe will remain intact.

You may require me to pay for the reinstatement in one or more of the following forms: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are federally insured; or (d) Electronic Funds Transfer.

Upon reinstatement, the Loan Agreement will remain effective as if no acceleration had occurred. However, this right to reinstate will not apply if I sell or transfer any interest in the Property without your permission.

**19. SALE OF NOTE, CHANGE OF LOAN SERVICER, NOTICE OF GRIEVANCE, LENDER'S RIGHT TO COMPLY.** A full or partial interest in the Loan Agreement can be sold one or more times without prior notice to me. The sale may result in a change of the company servicing or handling the Loan Agreement. The company servicing or handling the Loan Agreement will collect my monthly payment and will comply with other servicing conditions required by the Loan Agreement or Applicable Law. In some cases, the company servicing or handling the Loan Agreement may change even if the Loan Agreement is not sold. If the company servicing or handling the Loan Agreement is changed, I will be given written notice of the change. The notice will state the name and address of the new company, the address to which my payments should be made, and any other information required by RESPA.

Any notice of acceleration and opportunity to cure under the Loan Agreement will satisfy the notice and opportunity to address the alleged violation provisions of this Section.

No agreement between you and me or any third party will limit your ability to comply with your duties under the Loan Agreement and the Applicable Law.

You and I are limiting all agreements so that all current or future interest or fees in connection with this Loan Agreement will not be greater than the highest amount allowed by Applicable Law.

You and I intend to conform the Loan Agreement to the provisions of Applicable Law. If any part of the Loan Agreement is in conflict with the Applicable Law, then that part will be corrected or removed. This correction will be automatic and will not require any amendment or new document. Your right to correct any violation will survive my paying off the Loan Agreement. My right to correct will override any conflicting provision of the Loan Agreement.

Your right-to-comply as provided in this Section will survive the payoff of the Loan Agreement. The provisions of this Section will supersede any inconsistent provision of the Loan Agreement.

**20. HAZARDOUS SUBSTANCES.** Hazardous Substances (a) "Hazardous Substances" means those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger and Environmental Cleanup.

I will not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. I will not do, or allow

-76M(TX) (0506).01                          Page 9 of 14                          Initials: _____

anyone else to do, anything affecting the Property: (a) that is in violation of any Environmental Law; (b) that creates an Environmental Condition; or, (c) that, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.

The presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and for the maintenance of the Property are allowed. This includes Hazardous Substances found in consumer products.

I will promptly give you written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property.

If I learn that, or am notified by any governmental or regulatory authority, or any private party that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I promptly will take all necessary remedial actions in accordance with Environmental Law. You will have no obligation for an Environmental Cleanup.

**21. ACCELERATION AND REMEDIES.** You will give me notice prior to acceleration if I am in default under the Loan Agreement. The notice will specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 21 days from the date you give me notice, to cure the default; and (d) that my failure to cure the default on or before the specified date will result in acceleration of all that I owe under the Loan Agreement and sale of the Property.

You will inform me of my right to reinstate after acceleration. If the default is not cured before the specified date, you have the option to require immediate payment in full of all I owe. If you are not paid all I owe, you may sell the Property or seek other remedies allowed by Applicable Law without further notice. You may collect your reasonable expenses incurred in seeking the remedies provided in this Section. These expenses may include court costs, attorneys' fees, and costs of title search.

I understand the power of sale is not a confession of judgment or a power of attorney to confess judgement or an appearance by me in a judicial proceeding. If the Property is sold under this section I or my successors will immediately give possession of the Property to the purchaser. If I do not, I or anyone residing on the Property may be removed by writ of possession.

**22. ASSIGNMENT OF RENTS, APPOINTMENT OF RECEIVER, LENDER IN POSSESSION.** As additional security, I assign to you the rents of the Property, provided that I have the right, prior to acceleration or abandonment of the Property, to collect and retain the rents as they become due.

Upon acceleration or abandonment, you, by agent or by court-appointed receiver, will be entitled to enter, take possession, manage the Property, and collect due and past due rents. All rents you or the court-appointed receiver collect will be applied first to payment of the costs of management of the Property and collection of rents, including receiver's fees, premiums on receiver's bonds, and reasonable attorneys' fees, and then to the sums secured by this Security Document. You and the receiver will be liable to account only for rents received.

**23. POWER OF SALE.** You may have a fully enforceable lien on the Property. Your remedies for my default include an efficient means of foreclosure under the law. You and the Trustee have all powers to conduct a foreclosure. If you choose to use the power of sale, you will give me notice of the time, place

VMP-76M(TX) (0506).01                              Page 10 of 14                              Initials: ___

and terms of the sale by posting and filing notice at least 21 days before the sale as provided by law. You will give me notice by mail as required by law. Failure to cure default on or before the date in the notice may result in acceleration of the amount that I owe under this Loan Agreement. The notice will inform me of my right to reinstate after acceleration and assert in court that I am not in default or any other defense to acceleration or sale. If I do not cure the default on or before the date in the notice, you, at your option, may declare all that I owe under this Loan Agreement to be immediately due and payable and may invoke the power of sale and any other remedies permitted by Applicable Law. The sale will be conducted at a public place. The sale will be held: (a) on the first Tuesday of a month; (b) at a time stated in the notice or no later than 3 hours after the time; and (c) between 10:00 a.m. and 4:00 p.m.

I allow the Trustee to sell the Property to the highest bidder for cash in one or more pieces and in any order the Trustee determines. You may purchase the Property at any sale.

Trustee will give a Trustee's deed to the foreclosure sale purchaser. A Trustee's deed will convey: (a) good title to the Property; and (b) title with promises of general warranty from me.

I will defend the purchaser's title to the Property against all claims and demands. The description of facts contained in the Trustee's deed will be sufficient to legally prove the truth of the statements made in the deed. Trustee will apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including court costs and reasonable Trustee's and attorneys' fees; (b) what I owe; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold through a foreclosure sale governed by this Section, I or any person in possession of the Property through me, will give up possession of the Property without delay. A person who does not give up possession is a holdover and may be removed by a court order.

**24. RELEASE.** Upon payment of all that I owe under this Loan Agreement, you will cancel and return the Note to me and give me, in recordable form, a release of lien securing the Loan Agreement or a copy of any endorsement of the Note and assignment of the lien to a lender that is refinancing the Loan Agreement. If you cannot, you will provide me with a discharge and release of all obligation under the loan. I will pay only the cost of recording the release of lien.

**25. LENDER'S RIGHTS AND BORROWER'S RESPONSIBILITIES.** You are entitled to all rights, superior title, liens and equities owned or claimed by any grantor or holder of any liens and debts due before the signing of the Loan Agreement. You may acquire these rights by assignment or the holder may release them upon payment.

Each person who signs the Security Document is responsible for each promise and duty in the Security Document.

Unless prohibited by Applicable Law, this Section will not: (a) impair in any way the Loan Agreement or your right to collect all that I owe under the Loan Agreement; (b) affect your right to any promise or condition of the Loan Agreement.

**26. TRUSTEES AND TRUSTEE LIABILITY.** One or more Trustees acting alone or together may exercise or perform all rights, remedies and duties of the Trustee under the Loan Agreement. You may remove or change any Trustee (e.g., add one or more Trustees or appoint a successor Trustee to any Trustee). This removal or change of Trustee must be in writing and may be: (a) at your option; (b) with or without cause; and (c) by power of attorney or otherwise. The substitute, additional or successor Trustee will receive, the title, rights, remedies, powers and duties under the Loan agreement and Applicable Law.

 -76M(TX) (0506).01

Page 11 of 14

Initials: _____

Copy from re:SearchTX

Trustee may rely, upon any notice, request, consent, demand, statement or other document reasonably believed by Trustee to be valid. Trustee will not be liable for any act or omission unless the act or omission is willful.

**27. DEFAULT.** Any default of my agreements with you will be a default of this Security Document.

**28. SUBROGATION.** If I ask, you will use proceeds from the Loan Agreement to pay off all valid outstanding liens against the Property. You will then own all rights, superior titles, liens, and interests owned or claimed by any owner or holder of an outstanding lien or debt. You own these things whether the lien or debt is transferred to you or whether it is released by the holder upon payment.

**29. PARTIAL INVALIDITY.** If any portion of the sums secured by this Security Document cannot be lawfully secured, payments minus those sums will be applied first to the portions not secured. If any charge provided for in this Loan Agreement, separately or together with other charges that are considered part of this Loan Agreement, violates Applicable Law, the charge is reduced to the extent necessary to eliminate the violation. At your option, you will refund the amount of interest or other charges paid to you in excess of the amount permitted by Applicable Law to reduce the principal of the debt or apply it to reduce the principal of the debt.

**REQUEST FOR NOTICE OF DEFAULT**
**AND FORECLOSURE UNDER SUPERIOR**
**MORTGAGES OR SECURITY DOCUMENTS**

You and I request that the holder of any mortgage, security document or other claim with a lien that has priority over this Security Document give you Notice, at your address listed on page 1 of this Security Document, of any default under the superior claim and of any sale or other foreclosure action.

 VMP®-76M(TX) (0506).01

Page 12 of 14

Initials: 

Copy from re:SearchTX

BY SIGNING BELOW, I accept and agree to the terms and promises contained in the Loan Agreement and in any Rider I sign which is recorded with it.

(DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. I MUST RECEIVE A COPY OF ANY DOCUMENT I SIGN.)

_Terri J. Stout_

Printed Name: _____ _____ (seal)
       (Please complete)                                -Borrower

TERRI J. STOUT

Printed Name: _____ _____ (seal)
       (Please complete)                                -Borrower

_____ (seal)     _____ (seal)
      -Borrower                                -Borrower

_____ (seal)     _____ (seal)
      -Borrower                                -Borrower

_____ (seal)     _____ (seal)
      -Borrower                                -Borrower

Copy from re:SearchTX

**STATE OF TEXAS**
County of *Collin*

Before me *Lisa M Ormes* on this day personally appeared
TERRI J. STOUT

known to me (or proved to me on the oath of
or through *her DL* ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this *30th* day of *August 2006*.

(Seal)



Notary Public

LISA M. ORMES
MY COMMISSION EXPIRES
February 10, 2010

My Commission Expires:

VMP-76M(TX) (0506).01                    Page 14 of 14                    Initials:

Filed and Recorded
Official Public Records
Brenda Taylor, County Clerk
Collin County, TEXAS
08/31/2006 01:57:24 PM
$68.00 TFOSTER
20060831001257710



STATE OF TEXAS            §

COLLIN COUNTY            §

## **VERIFICATION**

      Before me, the undersigned notary, on this day personally appeared Terri J. Stout, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

      "My name is Terri J. Stout. I have read the Plaintiff's Original Petition and Application for Injunctive Relief. The facts stated in it are within my personal knowledge and are true and correct."

_____
Terri J. Stout, Affiant

      SWORN TO and SUBSCRIBED before me by Terri J. Stout on the 6th day of February 2024.

_____
Notary Public in and for the
State of Texas

TIAR C LYNCH-GREEN
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 05/10/25
NOTARY ID 12682190-1